UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

ALYSON NALE                                  CIVIL ACTION NO. 3:19-CV-00473

VERSUS                                       JUDGE TERRY A. DOUGHTY

NURSE FINLEY, ET AL.                         MAG. JUDGE KAREN L. HAYES

RULING

This is an action brought by Plaintiff Alyson Nale ("Nale") against Defendants Nurse
Finley, Union Parish Detention Center (the "Detention Center"), and Travelers Indemnity
Company (collectively "Defendants") for damages Nale allegedly sustained as a result of her
confinement at the Detention Center between May and June of 2018.  Pending here is a Motion
in Limine filed by Defendants to partially exclude the expert report and testimony of Kathryn J.
Wild ("Wild") [Doc. No. 27].  Nale has filed an opposition [Doc. No. 37].  Defendants have filed
a reply to the opposition [Doc. No. 41].

For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN
PART.

I.      FACTS AND PROCEDURAL HISTORY

Nale arrived at the Detention Center on May 20, 2018, as a pretrial detainee.  Nale
alleges that she had been suffering from Reynaud's disease and that she immediately asked to
see a doctor for her left fingers, which she contends were visibly damaged.  After asking the
guards for help multiple times and being ignored, Nale alleges she was able to see Nurse Finley
only twice over the duration of her stay.

Nale bonded out of the Detention Center on June 15, 2018.  Nale alleges that she sought medical care on July 3, 2018, with a doctor at Urgent Care, who diagnosed her with gangrene and informed her that her fingers would have to be amputated.  On July 12, 2018, Nale underwent surgery in El Dorado, Arkansas, to remove her gangrenous fingers.

On April 12, 2019, Nale filed this lawsuit against Defendants. Nale's damage claims are based on (1) willful indifference to her serious medical needs, and (2) medical negligence in failing to care for her serious needs during her detention.  This alleged lack of care purportedly resulted in the post-release finding that her fingers were gangrenous and would have to be amputated.  For her willful indifference and medical negligence claims, Nale relies on the expert report and expert testimony of Wild, a Registered Nurse ("RN").

On November 4, 2020, Defendants filed the pending motion in limine, seeking to exclude portions of Wild's expert report ("Wild's Report"), and to prohibit parts of her proposed testimony [Doc. No. 27].   More specifically, Defendants argue that:

1.      Wild's Report contains impermissible legal opinions and conclusions;

2.      Wild's Report cites and relies on inapplicable, irrelevant national standards;

3.      Wild's Report asserts a "lack of documentation," but that is irrelevant to Nale's claims;

4.      Wild's opinions regarding requirements for medical and health care at inmate facilities should be limited to the Louisiana Administrative Code provisions;

5.      Wild's Report relies on improper hearsay medical opinions by Nale's cellmate;

6.      Wild lacks the expertise to render opinions as to inadequacies in inmate care; and

7.      Wild's Report makes improper credibility determinations.

2

The Court will consider each argument in turn.

## II.    Applicable Law and Analysis

### A.    Applicable Law

#### 1.    Motions in Limine

A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds. *Mathis v. Pinnacle Entm't, Inc.,* CIV.A. 11-2199, 2014 WL 2880217, at *5 (W.D. La. June 23, 2014) (quoting *Bocalbos v. Nat'l W. Life Ins. Co*., 162 F.3d 379 (5th Cir. 1998)).

#### 2.    Relevancy Under the Federal Rules of Evidence

The essential prerequisite of admissibility is relevance. *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) (Citing FED. R. EVID. 402).   Rule 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. FED. R. EVID. 401.  Evidence which is not relevant is not admissible. FED. R. EVID. 402.  Implicit in the above definition are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action. *Hall*, 653 F.2d at 1005.   Whether a proposition is of consequence to the determination of the action is a question that is governed by the substantive law.  Simply stated, the proposition to be proved must be part of the hypothesis governing the case a matter that is in issue, or probative of a matter that is in issue, in the litigation.  *Id.*

Moreover, pursuant to Rule 403 of the Federal Rules of Evidence, the Court may exclude evidence that satisfies the above requirements for relevancy "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED R. EVID. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED R. EVID. 403, 1972 Advisory Committee Note.

### 3. Hearsay Under the Federal Rules of Evidence

Rule 801(c) defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Pursuant to Rule 802, hearsay is not admissible except as provided by the Federal Rules of Evidence, by rules prescribed by the United States Supreme Court pursuant to statutory authority, or by Act of Congress. FED R. EVID. 802.

### B. Analysis

### 1. Impermissible legal opinions and conclusions

Defendants contend that Wilds' Report impermissibly offers the legal conclusion that Defendants were deliberately indifferent in numerous places. Wild Report states, in relation to the care given to Nale:

> ...Nurse Finley and the staff at the Union Parish Detention Center ... **recklessly disregarded** her serious medical need [Kathryn J. Wild, Preliminary Expert Report, Doc. No. 27-2, p. 7];
>
> ... Ms. Nale ... did see Nurse Finley twice during her incarceration, but here are no documents that demonstrate that this facility provides the needed access to care required to ensure that inmates' serious medical needs are addressed. This is well below the standard of care and shows **total indifference** to the needs of this incarcerated individual [*Id.*, p. 8];

4

...Nothing in the documentation provided support [sic]a delivery system that addresses the serious health care needs of the inmates incarcerated there. This is well below the standard of care and **indifferent to the serious medical needs of inmates** incarcerated at the Union Parish Detention Center [*Id*., p. 9]);

...Based on the lack of documentation provided by the defendants in this case, it is again clear that the system in place to provide care to inmates is well below the standard of care and **is indifferent to their serious medical needs** [*Id*., p. 10];

...Examining a patient with a serious medical need and ordering medications would certainly fall into this category and lack of documentation is reckless well below the standard of care and **indifferent to a patient's serious medical need** [*Id*., p. 10];

...there was no intake screening performed on this patient which is well below the standard of care **and indifferent to Ms. Nale's serious medical needs** [*Id*., p. 10, Opinion Summary No. 2];

...The Union Parish Detention Center did not have a system in place for Ms. Nale to report daily her health care needs. ... This was well below the standard of care and **indifferent to Ms. Nale's serious medical needs** [*Id*., p. 11, Opinion Summary No. 3];

...Ms. Nale was not provided with her physician prescribed medications in any regular or acceptable manner. This was well below the standard of care and **indifferent to Ms. Nale's serious medical needs** [*Id*., p. 11, Opinion Summary No. 5];

...there was no acceptable record keeping practice in place to provide Ms. Nale with continuity of health care while incarcerated ... This was well below the standard of care and **indifferent to Ms. Nale's serious medical needs** [*Id*. p. 11, Opinion Summary No. 6]; and

...the care provided to Ms. Alyson Nale by Nurse Finley in the Union Parish Detention Center did not meet reasonable and acceptable practices based on all the circumstances presented to them [sic] at the time of the care provided, and they [sic] **recklessly disregarded her serious medical need** [*Id*.].

(emphasis added)

Defendants contend that, although Wild omits the word "deliberate," it is clear that she is offering a legal conclusion of deliberate indifference.  Defendants further contend, that, whether or not they were deliberately indifferent to Nale's medical needs is a legal conclusion, which an expert is not allowed to make.  Nale responds that Wild is offering several opinions based on her 30 years expertise in nursing in a correctional facility, and, that these opinions are not legal conclusions, but instead are opinions of fact. She further asserts that, even if some of these opinions embrace the ultimate issue in the case, this is permissible under FED. R. EVID. Art. 704.

The Court finds that these statements are not admissible.  As stated in *Davidson v. Texas Dept. of Criminal Justice*, 91 Fed. App'x. 963 (5th Cir. 2004):

> Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs... "The legal conclusion of 'deliberate indifference[]' ... must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

[*Id.*, at 964].  In *U.S. v. Izydore*, 167 F.3d 213 (5th Cir. 1999), the Fifth Circuit specifically rejected the argument Nale now asserts. There, after citing Rule 704(a)'s allowance of expert testimony on an "ultimate issue" (*Id.*at 218), the *Izydore* Court said further, "[t]hat rule, however, does not allow a witness to give legal conclusions. *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)." (*Id.*). *See also McBroom v. Payne*, 478 Fed. App'x. 196, 200 (5th Cir. 2012) (noting Fed. R. Evid.704(a) "does not permit experts to offer legal conclusions"); *see also, U.S. v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) ("Rule 704(a) 'does not allow a witness to give legal conclusions.'").

The Court further finds that Wild's "indifference to serious medical needs" and "reckless disregard" opinions are legal conclusions as to the conduct at issue.  Additionally, these opinions are prohibited under FED. R. EVID. 403 because they are likely to confuse the jury, which could

interpret Wild's "indifference" and reckless disregard statements to actually mean deliberate indifference.

Defendants also object that Wild provides her commentary on the law, discussing (1) the holding of *Estelle v.Gamble*, 429 U.S. 97 (1976); (2) the legal definition of "cruel and unusual punishment"; (3) conduct "proscribed by the Eighth Amendment"; and (4) protections for pretrial inmates provided by the Fourteenth Amendment. Wild states:

> To deny care to a patient because of lifestyle behaviors, such as smoking and drug use, is unconscionable. If this were an acceptable practice in the correctional setting, millions of incarcerated individuals would be subjected to subpar care seen frequently prior to 1976 when *Estelle v. Gamble* established the principle that the deliberate failure of prison authorities to address the medical needs of an inmate constitutes "cruel and unusual punishment". It held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." The Fourteenth Amendment protects pretrial inmates held in Local Detention Facilities in the same manner.

[Doc. No. 27-2, p. 10]

Defendants object that there is nothing in Wild's Report that supports the assertion that Nale was denied care because of lifestyle behaviors, such as smoking and drug use. The quoted paragraph is also an improper argument and comment on the imagined fate of "millions of incarcerated individuals," and is an irrelevant rumination on prisoner rights in general. In a somewhat similar vein, an expert's improper discourse was held inadmissible in *Nagle v. Gusman*, No. 12-1910, 2016 WL9411376 (E.D. La. Feb. 29, 2016). There, the expert opined on factors that rendered an inmate's suicide "particularly tragic." Id., at *13. The court found these statements "totally inappropriate." *Id*. Pertinent here, the court said further:

> Nor does it appear that this opinion will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid.703; *see also Cook ex rel Estate of Tessier v .Sheriff of Monroe*

7

> *Cty., Fla.,* 403 F.3d 1092, 1110-11 (11th Cir. 2005) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Counsel should not retain experts to make their closing arguments for them. ... Dr. Schwartz's opinion concerning the "doubly tragic" nature of Goetzee's suicide is therefore inadmissible.

*Id.* The Court agrees. The above quoted opinion is an improper commentary on the law and is more in the nature of a closing argument.

Accordingly, Defendants' motion is GRANTED, and the above legal conclusions and commentary are excluded.

### 2. Wild's Report cites and relies on inapplicable, irrelevant national standards

Defendants object that Wild's Report cites and relies on the National Commission on Correctional Health Care ("NCCHC") Standards for Health Services in Jails (hereinafter "National Standards") [Doc. No. 27-2, pp. 7-10]. Defendants argue that the NCCHC Standards are not Louisiana requirements, and they are not applicable to the Detention Center. Moreover, Louisiana's Minimum Jail Standards/Medical and Health Care provisions, as set forth in the Louisiana Administrative Code, Title 22, Part III, § 2909, do not incorporate, reference, or mention the NCCHC Standards; therefore, the NCCHC Standards are not relevant under FED. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action").

Additionally, Defendants argue that references to NCCHC Standards would confuse the issues, mislead the jury, and be unfair. Thus, any evidence of and/or discussion of the NCCHC Standards should be excluded under FED. R. EVID. 403 (which allows exclusion of evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury ...").

Nale responds that she will agree to exclude testimony about the NCCHC Standards, and, that Wild will limit her testimony to the Louisiana law regarding the standard of health care in penal institutions.

Accordingly, Defendants' motion in limine is GRANTED, and any evidence of or reference to the NCCHC Standards for Health Services in Jails is excluded.

### 3.   Wild's Report asserts a "lack of documentation," but that is irrelevant to Nale's claims

Defendants object to the portion of Wild's Report that cites a NCCHC Standard ("SectionJ-H-01") regarding "Health Record Format and Contents" [Doc. No. 27-2, p.10], which "states that the method of recording entries in the health record and the format of the health record are approved by the responsible authority, and include at a minimum … " [Id.]. The Report further states:

> In all correctional healthcare settings, it is expected that medical care provided by health professionals is documented into an individual patient health record. Documentation in the health record provides for continuity of care from one provider to another and helps to ensure that patients receive appropriate care for their serious medical needs. Nurse Finley testified in his deposition that he only documents by exception, to include things like sending a patient to the hospital or drawing blood. Examining a patient with a serious medical need and ordering medications would certainly fall into this category and lack of documentation is reckless, well below the standard of care and indifferent to a patient's serious medical need.

[Id.,p. 10]. Defendants first argue that the cited National Standard is not applicable to the Union Parish Detention Center and cannot support any conclusion based thereon.  As indicated above, Nale responds that she will agree to exclude testimony about the NCCHC Standards and that Wild will limit her testimony to the Louisiana law regarding the standard of health care in penal institutions. Accordingly, to the extent Defendants object to any evidence of or reference to the

NCHHC Standards in Wilds' above quoted opinion, the motion is GRANTED, and any such reference is excluded.

Defendants further seek the exclusion of the above statement in full on the grounds that, although Nale alleges she was not provided medical care, she does not allege damages due to any lack of documentation regarding her medical condition, nor does she make any allegations regarding a lack of continuity of care from one provider to another due to any lack of documentation. [Complaint, Doc. No. 1, ¶¶ 4-24].

Defendants assert that a purported "lack of documentation" has nothing to do with Nale's claims. Wild's opinion is therefore irrelevant, in that her opinion would not aid the jury in determining any matter at issue. Wild's conclusion is also unfairly prejudicial; it confuses the issues and would mislead the jury. Thus, Wild's above quoted opinion should be excluded under FED R. EVID. 401 (relevance) and FED R. EVID.  403 (probative value outweighed/ prejudicial/ confuse issues/ misled jury). Also, her opinion states a legal conclusion.

Nale responds that Defendants failed to document her treatment, and, further, even lost all of her medical records, which is well below the standard of care and show indifference to her serious medical needs.

The Court finds that, at this juncture, Defendants have not carried their burden of showing that evidence of a lack of documentation, or a lack of continuity of care from one provider to another due to any lack of documentation, would be totally irrelevant at trial.  Accordingly, to the extent Defendants seek the exclusion of the above statement in full, the motion is DENIED. Defendants may re-urge their objection at trial.

4.    **Wild's opinions regarding requirements for medical and health care at inmate facilities should be limited to the Louisiana Administrative Code provisions**

As indicated above, Nale responds that she will agree to exclude testimony about the NCCHC Standards and that Wild will limit her testimony to the Louisiana law regarding the standard of health care in penal institutions.  Accordingly, Defendants' motion is GRANTED.

5.    **Wild's Report relies on improper hearsay medical opinions by her cellmates**

Defendants object to the portions of Wild's Report which cite written statements provided by other inmates that they could see that Nale's fingers had gangrene.  [Doc. No. 27-2, p. 9]. Regarding the assertions of one such inmate, Wild states: "Heidi Moon reported that during this time she could see the gangrene under Ms. Nail nails start to progress and she knew that Ms. Nale needed medical attention." [Id.]  Defendants contend that there is nothing in Wild's report to establish Heidi Moon is qualified to diagnose "gangrene" or otherwise qualified to provide medical opinions. The "gangrene" reference in Wild's Report should be excluded, and Wild should be prohibited from testifying as to cellmate reports of "gangrene." As noted in *Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co., Ltd.*, No. 17-5109, 2018 WL 947660 (E.D. La. Feb. 16, 2018):

> ...an expert's reliance on hearsay to form his expert opinion does not render the hearsay itself admissible as competent evidence. Indeed, Federal Rule of Evidence 703 "was amended in 2000 'to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted.'" *Szymanski v. Murphy*, 473 Fed. App'x.649, 654-55 (10th Cir. 2011)) quoting Fed. R. Evid. 703 advisory committee notes); *cf. Jones v. Am. Council on Exercise,* No. 15-3270, 2016 WL 6084636, at *10 (S.D. Tex. Oct.18, 2016) (Miller, J.)("This is perhaps the type of evidence an expert may rely upon, but it is hearsay and not admissible on its own.").

[Id.,at *2]. Defendants contend that they should not be prejudiced by an unsubstantiated hearsay medical opinion simply because Wild includes it in her Report. Accordingly, the "gangrene" statement should not be allowed.

Nale responds that expert witness testimony is a widely recognized exception to the rule against hearsay testimony.  She further contends that the witnesses have given sworn statements or have been deposed, with the exception of Heidi Moon, who failed to appear for her deposition.

Defendants reply that they are not making a blanket objection to "hearsay" used by Wild; instead, they object to Wild's quotation of an inmate's medical assessment of seeing "gangrene" in Nale's fingers while at the Detention Center. They object to the medical opinion of an inmate not shown to have any medical expertise, training, or knowledge, and whose medical assessment of "gangrene" could just as likely be attributed to bruises or some other medical condition.

The Court agrees that the hearsay "gangrene" information is not admissible simply because it is repeated in Wild's Expert Report. *See Associated Terminals of St. Bernard, LLC, supra.* Further, Defendants would be prejudiced by the introduction of hearsay in the form of the untrained inmates' medical diagnosis of gangrene.  Defendants' motion is GRANTED, and Wild will not be allowed to offer any evidence of "gangrene" based on the conclusion of untrained inmates lacking expertise to render a medical opinion.

6.     **Wild lacks the expertise to render opinions as to inadequacies in inmate care by correctional officers**

Defendants contend that Wild has no specialized knowledge of any standards or guidelines relating to correctional officers. This objection is not directed to her testimony as to Nurse Finley, but, is instead directed to her testimony as to the correctional officers.  Defendants state that Wild's curriculum vitae further shows she has no experience or training as a law enforcement officer or as an officer at a correctional facility. Despite her lack of expertise in relation to correctional

officers, Wild states in her Report that the staff at the Detention Center did not meet reasonable and acceptable practices based on all the circumstances presenting to them at the time of Nale's incarceration, and, further, that they recklessly disregarded her serious medical need. [Doc. No. 27-2, p. 7]. Wild also states that there is nothing in the documents reviewed that indicates any officer properly responded to Nale's need for immediate care.  [*Id.*]

Defendants assert that Wild lacks the expertise to give opinions on alleged inadequate care given by any staff correctional officers at the Detention Center, and the above-referenced statements should be stricken, with Wild also prohibited from testifying as to correctional officer care for Nale, or the alleged lack thereof. They point out that Wild's testimony as to such matters was found inadmissible in *Grafton v. Bailey*, No. 13-2940, 2018 WL 2325410 (W.D. La. May 22, 2018). There, the court said:

> Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See* Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S.Ct. 2786 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).
>
> Rule 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.
>
> "To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir.

13

2004), *quoting United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009), *quoting Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

The Court finds Nurse Wild is not qualified to testify to the conduct and actions of law enforcement officers. Thus, her opinions are inadmissible. The fact that Nurse Wild has 31 years of experience in the correctional health setting does not qualify her to testify as to whether the law enforcement officers were "deliberately indifferent." Nurse Wild begins her "Discussion and Opinion" section by concluding that based on "my 31 years in the correctional health setting, it is my opinion that the care provided by ... health providers ... was so dysfunctional, uncaring and haphazard, that it amounted to deliberate indifference." Record Document 38-2 at 6. Nurse Wild then reviews national accreditation standards and Louisiana statutes as they relate to health care providers. See Record Document 38-2 at 6-9. After comparing these standards with the actions of Dr. Hearn and Nurse Edwards, Nurse Wild then concludes that "the emergency response [of Deputy Tate] was well below the standard of care" and "the correctional officers at the Claiborne Parish Women's Jail were subjectively aware that [ ] Grafton was in need of medical treatment for a serious condition and consciously disregarded her serious health care needs." Record Document 38-2 at 9-10.

Although Nurse Wild has a specialized knowledge in the field of correctional health care, she fails to show how she has any specialized knowledge of the standards or guidelines of correctional officers—Nurse Wild has no experience or training as a law enforcement officer or as an officer at a correctional facility. Thus, she is unqualified on this issue and her testimony on this matter is excluded. *See Lee Green v. LA. Dep't of Pub. Safety & Corr.*, 2010 WL 1628769, *4 (W.D. La. 2010). The Court acknowledges that Nurse Wild may be qualified to render her opinions on the actions of Nurse Edwards, but her actions are not at issue in this matter. Nurse Wild is not a medical doctor and cannot opine on the conduct or standard of care pertaining to Dr. Hearn. Therefore, the Court

finds Nurse Wild's opinions inadmissible under Fed. R. Evid. 702(a).

[*Id*., at * 5].

Nale does not address this issue in her opposition.

The Court agrees with Defendants' arguments.  Although Wild is qualified to render her opinions on the actions of Nurse Finely, she has no experience or training as a law enforcement officer or as an officer at a correctional facility, and she is not qualified to render her opinions on their actions.  Accordingly, Defendants' motion is GRANTED, and Wild's Report and testimony as to inadequacies in inmate care by correctional officers is excluded.

### 7.    Wild's Report makes improper credibility determinations

Defendants object to the following credibility assessment in Wild's Report:

> ...Nurse Finley... stated in his affidavit that Ms. Nale's fingers appeared the same at release at [sic] they did at intake, but this statement is *suspicious* since he testified that he never examined this patient.

[Doc. No. 27-2, p. 8, emphasis added].

 "As a general rule, an expert may not opine on another witness's credibility because this testimony does not help the trier of fact, who can make its own credibility determinations. ... Accordingly, courts often preclude experts from testifying that ... a certain witness is or is not believable." *Nagle*, *supra*, 2016 WL541436, at *4, *citing United States v. Hill*, 749 F.3d 1250, 1260, 1263 (10th Cir. 2014) (collecting cases); *see also Poole-Ward v. Affiliates for Women's Health, P.A*., 329 F.R.D. 156, 168-169 (S.D. Tex. 2018) ("Dr. Nace's statement that 'there have been no credible reports or any indications of subsequent substance misuse, abuse or dependence based upon my review of multiple independent sources of information' ..is stricken, because it opines as to the credibility of the medical staff who saw Dr. Poole-Ward on May 21").

Defendants contend that Wild clearly makes a credibility assessment, which should be stricken and excluded.

Nale responds that Nurse Wild's report regarding Nurse Finley is not a credibility determination; instead, the Report includes statements by Nurse Finley. In his deposition, Finley claims that he never had any previous experience with Reynaud's disease and never researched it [Finley Deposition, Doc. No. 37-1, p. 28]. He never took any cultures or blood from Nale to determine if her fingers were necrotic or gangrenous [*Id*.]. He screened Nale on intake, but any records of that screening are gone [*Id*., p. 30]. Finley's belief is that Nale's fingers never got any worse while she was under his care, but he never examined her fingers other than the first day [Id., p. 46]. He ordered medications for her fingers on May 21, 2018, but the medications did not arrive until June 5, 2018 [Pharmacy Records, Doc. No. 37-2]. He did not know that Nale had a right guaranteed to see a physician within 48 hours of request under Louisiana law [Doc. No. 37-1, pp. 69-70].

Nale asserts that these are Nurse Finley's statements in his deposition, not credibility calls. In the event any of Wild's opinions were based on a credibility call, Nale states the questions at trial will be couched as, "If the jury finds that inmate X's testimony is credible, would you find that Nurse Finley's actions evidenced a breach in the standard of care?" This is the standard type of hypothetical questions that is posed to expert witnesses and completely appropriate. In the end, the jury is free to accept, in whole or in part, any of her testimony.

The Court finds that Wild made an improper credibility determination as to an alleged "suspicious" statement by Nurse Finley regarding the condition of Nale's fingers.  Nale fails to address Defendants' cited case law demonstrating the impropriety of an expert's credibility assessments; instead, Nale essentially argues Nurse Finley's statement *was* suspicious.  Although

Nale is free to cross-examine Nurse Finley at trial (or seek to use deposition testimony), Wild's statement regarding Nurse Finley's credibility is improper.

Accordingly, Defendants' motion is GRANTED, and the above statement by Wild assessing Nurse Finley's credibility is excluded.

### III.    Conclusion

Accordingly, for these foregoing reasons, Defendants' Motion in Limine [Doc. No. 27] is **GRANTED IN PART** and **DENIED IN PART**.

MONROE, LOUISIANA, this 7th day of December, 2020.


**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**